In the Matter of WILLIAM C. OSBORN, Appellant, against S. HOWARD COHEN et al., Constituting the Board of Elections in the City of New York, et al., Respondents.

56

(Argued October 2, 1936; decided October 13, 1936.)

*H. H. Nordlinger, Harold Riegelman* and *J. M. Dinnes* for appellant.

*Paul Windels, Corporation Counsel (William C. Chanler* of counsel), for S. Howard Cohen et al., constituting the Board of Elections in the city of New York, respondents.

*Alfred J. Talley, Charles Lamb* and *James A. McKaigney* for Vincent J. Kane, individually and as president of Uniformed Firemen's Association, etc., respondent.

58

CROUCH, J. It is the law of the State (State Const. art. XII, § 2) that the Legislature may not pass any law relating to the property, affairs and government of a city which is special or local, either in terms or effect, except on an emergency message from the Governor and the concurrent action of two-thirds of the members of each house of the Legislature.

The question here is whether chapter 886 of the Laws of 1936 is unconstitutional because it was not passed in that way. This statute adds a new section to chapter 226 of the Laws of 1922. It directs the submission to the qualified voters of every city having a population of one million or more inhabitants, at a general election to be held this year, of the question whether the three platoon system for members and officers of the fire department shall be adopted; and provides, in case of a majority affirmative vote, that the fire commissioner of the city shall divide the employees into three platoons, with an eight-hour day and one day of rest in seven, and that the local legislative body shall enforce the act and provide all necessary funds. Under the act of 1922, the officers and employees of the fire departments in cities of the first class are divided into two platoons, one of which is on duty not to exceed ten hours and the other not to exceed fifteen hours.

Without deciding whether the new statute, though general in terms, was in effect local to the city of New York, the court below held that it did not relate in a legal sense to the property, affairs or government of cities because its subject is in a substantial degree a matter of State concern. The rationale was in substance this: the working hours of firemen will, by the act, be reduced to a point less wearing to their mental and physical

resources; their health will thus be improved and their efficiency increased; thereby the safety and welfare of the city and its large population, resident and transient, will be materially subserved, with reflected benefits in a substantial degree to the people of the entire State; hence the statute's subject is a matter of State concern.

We find no support in the decided cases for a conclusion so drily logical drawn from asserted facts without foundation in the record. In allocating a particular statute to the one category or the other, no doubt " the degree of interest on the part of sections of the state, outside of the city or cities directly affected by a statute, may be a relevant factor." (LEHMAN, J., in *Adler* v. *Deegan*, 251 N. Y. 467, 496.) But it is not the essential or fundamental factor. Historically and traditionally the State has functioned in certain fields of government, the municipalities in certain other fields. While always and unavoidably there has been an obscure zone between the two fields, the basic distinction between them remains. " Let us," said CRANE, J., in *Adler* v. *Deegan* (p. 478), " recognize in our decision the useful division which custom and practice have made between those things which are considered State affairs, and those which are purely the affairs of cities." So, in that case, the subject of the statute, which at first blush seemed to relate only to the affairs of cities, was held to be of State concern, since it dealt with the maintenance of life and health. " The advancement of that interest, like the advancement of education, is a function of the State at large." (CARDOZO, Ch. J., *Adler* v. *Deegan*, p. 485.) The holding in *Robertson* v. *Zimmermann* (268 N. Y. 52) rested upon the same foundation. Transportation (*Admiral Realty Co.* v. *City of New York*, 206 N. Y. 110; *Matter of McAneny* v. *Board of Estimate*, 232 N. Y. 377) and widespread unemployment (*New York Steam Corp.* v. *City of New York*, 268 N. Y. 137), like health and education, have been, by custom, tradition and practice, considered as matters of State concern.

Not so, however, the establishment and control of fire departments. Historically and as matter of common knowledge, fire departments have been recognized agencies of municipal governments, and their organization, operation and administrative control have been deemed matters of local concern. (Cf. *Trustees of Exempt Firemen's Benevolent Fund* v. *Roome*, 93 N. Y. 313; *Exempt Firemen's Association* v. *Trustees of Exempt Firemen's Benevolent Fund*, 34 App. Div. 138; *Simpson* v. *Paddock*, 195 Mich. 581.) The Legislature so considered the fire department of the city of New York in enacting the provisions of chapter 15 of the City Charter (Laws of 1901, ch. 466, as amd.); and more recently by enacting as an emergency law, chapter 202 of the Laws of 1929, relating to the minimum wage of first grade firemen. So, indeed, did the people of the State by adopting the Home Rule Amendment to the Constitution, which by section 3 gives to every city the power to adopt and amend laws " relating to the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation of all officers and employees of the city." The statute in question deals with nothing but the duties of firemen, by shortening their hours of work, and with their numbers, by necessarily making a large increase therein. Those are matters which clearly relate to the affairs of cities. If the Legislature is to deal with them, it must do so in accordance with the fundamental law. This it has done if the statute may be said to be general both in terms and in effect. That, we think, cannot be justly said. (*Matter of Mayor, etc., of New York* [*Elm St.*], 246 N. Y. 72.)

The order appealed from should be reversed, without costs, and the application for a peremptory order of mandamus granted.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, LOUGHRAN and FINCH, JJ., concur.

Order reversed, etc.