In the Matter of WILLIAM A. CAPARCO et al., Constituting the Municipal Civil Service Commission of the City of Rochester, Appellants, *v.* H. ELIOT KAPLAN et al., Constituting the State Civil Service Commission, et al., Respondents.

Fourth Department, January 15, 1964.

*Arthur B. Curran, Jr., Corporation Counsel (Jack Goodman* of counsel), for appellants.

*Louis J. Lefkowitz, Attorney-General (Latimer B. Senior, Paxton Blair* and *Herbert H. Smith* of counsel), for New York State Civil Service Commission, respondent.

*Leo T. Minton, Monroe County Legal Adviser (Raymond H. Schwartz* of counsel), for Monroe County Civil Service Commission, respondent.

*Per Curiam.* This appeal arises out of a controversy between county and municipal governments concerning the administration of civil service in the City of Rochester. It began by the institution of an article 78 (Civ. Prac. Act) proceeding by which the petitioners-appellants, who constituted the Municipal Civil Service Commission of the City of Rochester, sought an order " (a) annulling and setting aside the determination made by the respondent, the State Civil Service Commission, in which said

respondent refused to accept for approval or disapproval the Rules of the Municipal Civil Service Commission of the City of Rochester adopted by the petitioners on April 5, 1962, and (b) compelling the respondent, the State Civil Service Commission, to approve said Rules, if satisfactory, pursuant to Section 20 of the Civil Service Law of New York, and (c) compelling the respondent, the Monroe County Civil Service Commission, to terminate its administration of the civil service in the City of Rochester and to turn over to the petitioners all the records pertaining to the civil service employees of the City of Rochester ".

In order to put this appeal in proper perspective it is necessary to give the background of the administration of civil service in the city and county prior to February, 1961. Before that date both the city and the county had separate Civil Service Commissions, the city administering its commission pursuant to the provisions of the city charter. By act of the State Legislature (L. 1961, ch. 565; Optional County Government Law, § 1008, eff. April 12, 1961) an amendment was made to the Optional County Government Law to increase the membership of any civil service commission in a county having adopted the county manager form of government pursuant to plan " B " and to provide that any city wholly within such county might withdraw from the municipal civil service commission and transfer its jurisdiction to county's civil service commission " without restrictions relating to effective date ". It should be noted that Monroe County is the only one in the State which adopted and is operating under the county manager form of government pursuant to plan " B " (cf. *Matter of Dutcher* v. *Hatch*, 19 A D 2d 341). Section 1008 provides that " Notwithstanding any inconsistent provisions of any general, special or local law, if the council or other legislative body in a city wholly within a county which has adopted plan ' B ' authorizes the withdrawal of the city from its existing form of civil service administration and elects that the provisions of civil service law shall be administered in such city under the jurisdiction of the civil service commission of the county ", it may do so pursuant to specific provisions as to composition, method of selection of commissioners and terms of office.

On December 12, 1961 the legislative body of the city (the Council) by Ordinance No. 61–506 elected to withdraw the civil service system from the administration of the City Civil Service Commission and transfer it to the Monroe County Civil Service Commission, pursuant to the authority granted by section 1008 of the Optional County Government Law. Simultaneously

therewith, the City Council enacted Local Law No. 7 abolishing the City Civil Service Commission, effective December 15, 1961, and transferring its members to the County Civil Service Commission. The City Council thereafter, on January 23, 1962, adopted Local Law No. 1 of 1962 (eff. Jan. 29, 1962) and Ordinance No. 62–18, by which it purported to revoke the action taken by the City Council on December 12, 1961, created a new City Civil Service Commission and provided for a retransfer of the city civil service system to the reactivated City Civil Service Commission. This commission adopted proposed rules and regulations, pursuant to section 20 of the Civil Service Law, which the State Commission declined to accept upon the ground that under section 1008 of the Optional County Government Law the city had no authority to establish the new Civil Service Commission. It is in this posture which the matter now comes before us.

The main thrust of appellants' position is that section 1008 of the Optional County Government Law is in violation of section 11 of article IX of the State Constitution and that this contention involves three subsidiary issues:

1. Was the law an act in relation to the property, affairs, or government of any city within the meaning of section 11 of article IX?

2. Was it a local law within the meaning of section 11 of article IX, in that it did not apply alike to all cities?

3. If it is a local law applying only to Rochester and concerns its property, affairs or government did the Legislature receive a proper home rule request from the Mayor of the City of Rochester concurred in by the Common Council as required by section 11 of article IX?

We find it unnecessary to reach or pass upon these issues, as a further contention of appellants, hereinafter discussed, is dispositive of the appeal. This further contention of appellants is that, even if section 1008 is constitutional, the city possessed the right, pursuant to subdivision 1 of section 11 of the City Home Rule Law, to take the legislative action it did in revoking the transfer of civil service administration from city to county and in recreating the Municipal Civil Service Commission. So far as its application is pertinent here that section of the City Home Rule Law provides: " 1. Subject to the restrictions provided in this chapter, the local legislative body of a city shall have power to adopt and amend (a) local laws in relation to the property, affairs or government of the city * * *. Local laws adopted pursuant to (a) or (b) of this subdivision may

change or supersede any provision of an act of the legislature theretofore enacted which provision does not in terms and effect apply alike to all cities.''

Respondents urge, in answer to appellants' contention, that section 1008 of the Optional County Government Law does not relate to property, affairs or government of the City of Rochester and that the Home Rule Law is not applicable. Civil service, they assert, is a matter of paramount State concern and relates to matters other than the property, affairs or government of the City of Rochester. In our view, the administration of civil service is not capable of such precise classification. It is true that any issue substantially affecting the merit system is a matter of primary State concern because the whole fabric of civil service depends upon adherence to the principle of the merit system based upon competitive examinations (N. Y. Const., art. V, § 6; *Matter of Meenagh* v. *Dewey,* 286 N. Y. 292; *Matter of Friedman* v. *Finegan,* 268 N. Y. 93). Yet, as to the administration of the Civil Service Law, the functions of both State and local (either county or municipal) commissions are recognized as separate, each with its own prerogatives (Civil Service Law, art. II, §§ 5–9, 15–27; General City Law, § 20, subd. 18; *Matter of Ebling* v. *New York State Civ. Serv. Comm.,* 305 N. Y. 221; *Matter of Woods* v. *Finegan,* 246 App. Div. 271). The municipal commission is not a mere appendage to the State system but is an integral and yet independent facility enjoying substantial autonomy as to singularly local problems and solutions. There is no problem as to change in the form of administration of civil service from a county commission to a municipal commission or vice versa. The Civil Service Law expressly sanctions such change in the form of administration, if a city or county so elects (Civil Service Law, § 16, subd. 1, pars. [a] and [b]; subd. 2, par. [a]).

The City Council of Rochester has the power validly to establish a City Municipal Commission pursuant to section 12 of article IX of the State Constitution, and subdivision 1 of section 11 of the City Home Rule Law. The local administration of civil service is a matter relating to the property, affairs or government of any city, within the meaning of section 12 of article IX of our State Constitution and the subject matter of any law pertaining to the administration of local civil service constitutes a local, as opposed to a general, law. The cases relied upon by the respondents where it was determined that matters of paramount State concern were at issue as opposed to predominantly local interests all involved either the exercise

of police power of the State in protecting the health and public welfare (*Whalen* v. *Wagner,* 4 N Y 2d 575; *New York Steam Corp.* v. *City of New York,* 268 N. Y. 137; *Adler* v. *Deegan,* 251 N. Y. 467) or a business in which the public had an interest (*County Securities* v. *Seacord,* 278 N. Y. 34; *Matter of McCabe* v. *Voorhis,* 243 N. Y. 401; *Admiral Realty Co.* v. *City of New York,* 206 N. Y. 110; *Kelly-Sullivan, Inc.* v. *Moss,* 174 Misc. 1098, affd. 260 App. Div. 921) or the subject matter so patently affected residents of the entire State (*Robertson* v. *Zimmermann,* 268 N. Y. 52) that the State's concern was obviously overriding. Not so in respect of the local administration of civil service which does not involve an exercise of the police power of the State and is analogous to those cases which hold that administrative control of a municipal agency is a matter of local concern and comes within the definition of property, affairs or government of any city (*Matter of Holland* v. *Bankson,* 290 N. Y. 267; *Matter of Osborn* v. *Cohen,* 272 N. Y. 55; *Bareham* v. *City of Rochester,* 246 N. Y. 140). We hold that the City Council of the City of Rochester in January, 1962 had the authority, pursuant to subdivision 1 of section 11 of the City Home Rule Law to establish the Municipal Civil Service Commission and to revoke the prior election to change the form of civil service from city to county administration.

The respondent County Civil Service Commission raises a jurisdictional question in its contention that appellants have no legal capacity to institute these proceedings, for the City Civil Service Commissioners were not " duly appointed ". If the City Council acted validly in establishing the Municipal Civil Service Commission, as we hold it did, it certainly had the right and authority to establish itself with a full complement of three members as provided by the amendment to the city charter which reinstated the provisions thereof relating to the establishment of a Municipal Civil Service Commission. The county contends that the local law provided no means of appointing members of the newly formed commission and their argument is premised on the fact that there was no language similar to that found in the 1925 city charter provisions which perpetuated the commissioners in office in 1925 until their respective terms expired. The local law provides that the City Manager shall appoint members to the commission and that in May of each even-numbered year commissioners shall be appointed for a term of six years. Furthermore, the procedure for appointment is spelled out in paragraph (a) of subdivision 1 of section 15 of the Civil Service Law which specifically provides for the appointment of the original members of a commission, for the

expiration of their terms, and for the appointment of new members.

The order appealed from should be reversed and the relief demanded in the petition granted.

WILLIAMS, P. J., BASTOW, GOLDMAN and HENRY, JJ., concur.

Order unanimously reversed and petition granted, without costs of this appeal to any party.