Maurice Wahl, J.
In this summary holdover proceeding the landlord alleges that the two-year term under the written rental agreement came to its natural termination date on March 31, 1969; that the tenant holds over without permission and that the proper 30-day termination notice has been given.
The parties hereto by their respective attorneys have by written statement entered into an agreed statement of facts. These are:
1. Fifty Central Park West Corp. is the landlord and owner in fee of the premises known as 50 Central Park West, in the Borough of Manhattan, City and State of New York.
2. Lydie Bastien is the tenant of the apartment on the second floor of said premises, known as Apt. 2C, and continues in possession of the said apartment.
3. Michael Brod, Ralph Lichtly and Edward Serzysko are undertenants of the afore-mentioned tenant and are occupants in said apartment.
4. The tenant entered into possession of the said premises under the terms of a written rental agreement made on November 12,1957, and has continued in possession under a series of written rental agreements, the last of which was made on the 1st day *196 of April, 1967, for a term to commence on the 1st day of April, 1967 and to end on the 31st day of March, 1969, at annual rental of $4,500, payable in equal monthly installments of $375 each. A copy of said last rental agreement is annexed.
5. The undertenant Edward Serzysko has been residing in the premises as an undertenant since July of 1962 and still so resides. All rents from. May of 1964 through March, 1969 have been paid by checks of the said Edward Serzysko and have been accepted by the landlord.
6. The undertenant Michael Brod has been residing in the premises as the secretary to the tenant for approximately 10 years and still so resides. The undertenant Ralph Lichtly has been residing in the premises as undertenant for approximately eight years and still so resides.
7. On January 31, I960, the managing agent for the landlord addressed and forwarded a communication to the tenant expressing its intent not to renew the lease expiring March 31, 1969.
8. The term for which said premises were rented by the tenant expired on March 31, 1969, as set forth in said lease and the tenant and undertenants continue in possession of the premises.
9. No written consent was given to the tenant for underletting of the premises, either during the term of the last lease or during the term of any prior written lease.
10. No written permission was given by the landlord to the tenant to continue in possession of the premises after the expiration of the said term as set forth in said lease.
11. The undertenant Edward Serzysko has tendered to the landlord certified checks for the rent for the months of April, May, and June, 1969, similar to the ones heretofore accepted by the landlord, but the same have been refused by the landlord.
At the hearing before this court on June 18, 1969, the respective attorneys argued their positions which stated succinctly at stenographer’s minutes, page 6, line 7 through 11:
“ Mr. Pollack: The facts are agreed to as set forth before your Honor in the agreed statement of facts.
“ It is the landlord’s contention that he is not subject to the Guide Lines. It is the tenant’s contention that they are subject to the Guide Lines.”
What each counsel is referring to is the impact herein of Local Law No. 16 (Local Laws, 1969, No. 16 of City of New York) concerning stabilization of rents exempt from residential rent control, by voluntary self-regulation by the industry and providing for the establishment of a rent guidelines board, the creation of industry stabilization associations, and the adoption of a code for stabilization of rents; also the establishment of a *197 conciliation and appeals board and other matters in relation thereto.
Local Law No. 16 of the City of New York was passed by the Council on April 24, 1969 and approved by the Mayor on May 6, 1969. Thus giving it a most favorable effective date, the earliest would be April 24, 1969.
The court has most carefully studied this law and must sadly conclude, that in fact, this law is an exercise in futility. In the first place there is no mandatory fixation of applicability to all landlords of noncontrolled residential rental property. This is merely permissive in that it permits a voluntary landlord association to be organized, if no less than 40% of the covered dwelling units are registered with the Housing and Development Administration (§ YY51-6.0). The patent defect is that a landlord who does not join such an association is beyond the purview of the law, even though 40% of the dwelling units are registered. The remaining 60%, in whole or in part, are seemingly exempt from the law. Even if 1% declined to join, there is no provision in this law to enforce its provisions against any such landlord. It is established law that all members of an association are bound by any master contract that such an association may enter into. This is a universal practice in labor-management relations. Thus the discrimination that could result to a tenant whose landlord is not an association member is obvious. Unless this law, intended to bridge an emergency, covers all of the class of persons intended to be covered, it is special, private and class legislation. (1 Blackstone’s Comm., pp. 85, 86.)
If this Local Law No. 16 is intended as a general law, it must extend to and embrace all persons of a particular class (People ex rel. Cent. Trust Co. v. Prendergast, 202 N. Y. 188; Matter of Church, 92 N. Y. 1; Koster v. Coyne, 110 App. Div. 742, affd. 184 N. Y. 494). Even were this local law deemed a general law, upon which there is doubt, the classification must at some point cease and designation begin (Matter of Henneberger, 155 N. Y. 420). It has been therefore held that the class (all these affected landlords) subjected to this local law must be a class in more than name alone (Matter of Mayor, etc. of City of N. Y. [Elm St.], 246 N. Y. 72). Such must be reasonable (Adler v. Deegan, 251 N. Y. 467, rearg. den. 252 N. Y. 574, remittitur amd. 252 N. Y. 615) and must not amount to a mere subterfuge to evade constitutional restrictions upon the passage of special laws (Matter of Henneberger, supra). As the law at bar does not mandate that all landlords of uncontrolled property, but only those who are members of an approved association are subject to the law, it does violence to the precepts above enunciated.
*198 The mere fact that Local Law No. 16 empowers the promulgation of certain acceptable guidelines is irrelevant, because such would only be applicable to the members of an approved association. They would not bind nonmembers. This law was intended to parallel the present existing emergency residential rent law as to those prewar houses, e.g., the creation of a “ local rent office ” equivalent to the “ association the “ Conciliation and Appeals Board ” equivalent to the “ Rent Director”; all before resort to an article 78 CPLR proceeding in the court. If that conception were expressed in the local law, then there would be no need for an association, nor percentage of owner landlords to join the same, in order to make it effective. The law per se should provide for its applicability to all such landlords intended to be embraced therein. The yardstick for fixing the “ roll back ” of rent of May 1, 1968, is only a basis for computing the percentage increase on leases of one through three years. It is not a premise for the absolute coverage of all landlords in this category. In fact, those landlords who may join such an association may achieve lesser rights than those who abstain, as the latter are not bound by any rules or guidelines. Thus the unequal treatment of members of the same class of landlords is patently discriminatory. This, of course, must affect the tenants.
This statute is misconceived in its thrust, impotent in its application and frustrated in its result. It is not well drawn and is, in this court’s humble opinion, a useless law. In construing this law, the court is reminded that: “ Courts cannot correct supposed errors, omissions or defects in legislation * * * The office of interpretation is to bring sense out of the words used, and not bring a sense into them.” (Meltzer v. Koenigsberg, 302 N. Y. 523, 525.)
Finally it is observed that this local law is prospective in its operation, not retroactive, and cannot affect substantive rights which accrued prior to the effective date of this law on April 24, 1969. (McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 53.)
The court finds that the legislative intention to protect the welfare of the citizens affected by such law falls short in its execution. Finally, in this court’s opinion, permitting an interested private association to possess what in effect would be legislative power is an unlawful delegation of such legislative power.
The rights of the parties here became fixed, absolute and vested when the lease expired at midnight on March 31, 1969. The court holds therefore that Local Law No. 16 has no application herein. Judgment for landlord.