Per Curiam.

In light of the unique situation presented on the instant record a brief delineation of the factual background of this litigation is warranted. Tenant moved into the subject apartment in September, 1966, pursuant to a lease for the term October 1, 1966, through September 30, 1968. Prior thereto, he had lived in another building owned by the petitioner and was offered the subject apartment when the other building was demolished. By order dated April 24,1968, the rent commission found the subject apartment decontrolled, effective November 14, 1966. Upon tenant’s receipt of notice thereof, he protested the order and received an adverse decision from the rent commission. Then an article 78 proceeding was instituted by the tenant, which resulted in a remand of the proceeding to the rent commission. Thereupon, there were discussions between tenant’s counsel and landlord’s counsel, which resulted in the execution of a stipulation of discontinuance, and of the lease at issue herein. This lease, which by its terms expired in February, 1972, provided in paragraph 30: “At the expiration of the term hereof landlord may thereafter terminate the then month to month tenancy of tenant, upon the giving of sixty (60) days written notice. If tenant vacates on or before the date set forth in said notice landlord ahall pay to tenant the sum of Two Thousand ($2,000.00) Dollars. In the event tenant holds over beyond the date so fixed by landlord there shall be deducted from said sum of Two Thousand ($2,000.00) Dollars, which landlord is obligated to pay, the sum of One Hundred ($100.00) Dollars per day for each day tenant holds over beyond the date specified in the sixty (60) day notice.”
During the term of the lease, the Rent Stabilization Law was enacted (Administrative Code of City of New York, tit. YY, ch. 51, added by Local Laws, 1969, No. 16 of City of New York). By letter dated January 12, 1972, tenant requested a new lease which request was rejected by the landlord on January 14,1972. Following that, tenant received a letter from the landlord offering tenant the $2,000 amount referred to in the above-cited lease paragraph. Thereupon, tenant commenced a proceeding before the Rent Stabilization Conciliation and Appeals Board, asserting his claim of right to a new 11 renewal ’ ’ lease under the Rent Stabilization Law (Administrative Code, § YY 51-6.0, subd. c, par. [9]). That board rendered a determination May 11, 1972, which stated, in pertinent part, concerning landlord’s claim of *132 right to possession under paragraph 30 of the lease: “ the issues raised by the parties’ contention concerning the meaning of this settlement agreement are not determined herein by this board and this order is without prejudice to the rights and defenses of the parties in a court of competent jurisdiction ”. The instant proceeding was then commenced.
Tenant argues that when the lease expired, the landlord was required to offer a new lease pursuant to section YY 51-6.0 (subd. c, par. [4]) of the Administrative Code which mandates such leases to be offered, except under certain circumstances not here present, for apartments subject to the Rent Stabilization Law. The landlord primarily urges that no new lease was required to be offered because the lease provision quoted above coupled with the stipulation of discontinuance constituted an agreement in settlement of litigation which has not been rendered ineffective by the Rent Stabilization Law.
Section 65 of the Code of the Real Estate Industry Stab'dization Association of New York City, Inc., prohibits inclusion of rights of cancellation or eviction by landlords in leases offered under the Rent Stabilization Law. It does not prohibit exercise of any such right granted in other leases (cf. Code of Real Estate Industry Stabilization Assn., 10, subd. [b], and N. Y. City Administrative Code, § YY 51-6.0, subd. c, pars. [2], [3], for sections which provide for retroactivity). Section YY 51-6.0 (subd. c, pars. [4], [9]) of the New York City Administrative Code which requires landlords to offer renewal leases is not couched in retroactive terms and has been held not retroactive by this court as to leases expiring prior to the effective date of the statute (Fifty Cent. Park West Corp. v. Bastien, 64 Misc 2d 911, affg. 60 Misc 2d 195). This court then stated (p. 912) with respect to the issue of retroactivity: “ A pre-existing right is not affected by legislation, unless legislative intent to the contrary is obvious, so that any doubt is to be resolved in favor of holding the subsequent statute to be prospective only ”. The antiwaiver provisions of the Rent Stabilization Code (§§ 11, 65) are also not couched in retroactive terms. No such antiwaiver provision is contained in the Administrative Code. The lease at issue herein did not expire prior to the effective date of the Rent Stabilization Law. Nevertheless, insofar as paragraph 30 is concerned, it has indicia of an agreement to vacate executed in settlement of litigation.
If said lease provision is construed as an agreement to vacate, it is not barred by any express language of the code or the statute. Inasmuch as the lease provision specifically empowers the landlord to terminate the tenancy upon 60 days’ written notice *133 after expiration of the lease term, it is difficult to concur in tenant’s argument that this provision did not constitute an agreement to vacate. Clearly, insofar as it provided for payment to tenant of a certain sum if he vacated within the time required, and as it obligated the landlord to give a 60-day notice, it did give tenant additional rights. However, considering the language of this provision in the context of the prior administrative and judicial proceedings, it appears that these rights were given in exchange for tenant’s withdrawal of his claims. While the lease does not expressly state that it constituted an agreement in settlement of litigation, on the undisputed facts this inference clearly arises. Such agreement, absent trick or fraud, should be given effect (Herpe v. Herpe, 225 N. Y. 323). No such wrongdoing is here alleged.
Viewing the lease at issue as one entered into in settlement of litigation and acknowledging the purpose underlying the Rent Stabilization Law, this court concludes that said law was not intended to comprehend the instant unique situation. Inferentially, as part of the settlement of the controversy between landlord and tenant, the landlord did not pursue the legal remedies that were still open at the time of the settlement, in reliance on the terms embodied in the lease agreement entered into as part of such settlement. Assuming that the tenant has a right to renewal because of the Rent Stabilization Law, the landlord would be effectively barred of the options that were open to him at the time the litigation was settled.
Accordingly, construing the lease agreement as containing a provision to vacate, valid when made and not rendered ineffective by the Rent Stabilization Law, and such agreement, being in settlement of litigation, there is no right on tenant’s part to
• renewal of the subject lease.
The final judgment should be affirmed, with $25 costs.